BEARDEN, executor, *et al. v.* BALDWIN.

No. 8359.   DECEMBER 22, 1931.   REHEARING DENIED MARCH 5, 1932.

194

*Foster & Lewis,* for plaintiffs in error.

*C. W. Baldwin, C. S. Baldwin, Jr.,* and *John R. L. Smith,* contra.

RUSSELL, C. J. (After stating the foregoing facts.) The application of C. H. Baldwin to be appointed administrator de bonis non cum testamento annexo is based upon the request of parties

alleged to be interested in the estate of the deceased Barton Thrasher, and is made in his capacity as clerk of the superior court of Morgan County. The caveats are based upon the ground that there is no estate of Barton Thrasher to be administered.

There were two caveats to C. H. Baldwin's application to be appointed administrator. In the caveat filed by Bearden as executor of the will of Josephine V. Overby (formerly Josephine V. Thrasher) it is alleged that "The application should be refused for the following reasons: That, regardless of the construction placed on the deed of October 14, 1865, the title to said land would not vest in the heirs of said Barton Thrasher, because on October 14, 1865, he made his last will and testament, which went into effect at his death during the year 1867, and a copy of which is hereto attached, marked Exhibit B; and the caveator shows that even if the said Barton Thrasher had any reversionary interest in said land under the deed to Josephine V. Thrasher, that this reversionary interest passed to said Josephine V. Thrasher by virtue of said will, . . and that therefore, if there is any necessity for administration of said land in this court, it should be administered as a part of the estate of the said Josephine V. Overby." A further ground of the caveat set up "that there is no property now in existence, so far as he is advised, belonging to the estate of Barton Thrasher; and if administration be granted, 'it would operate as a cloud on the title of this caveator to the land described in the application for administration." The court had before it, therefore, on the hearing upon demurrer, both the deed to Josephine V. Thrasher and the will of Barton Thrasher. Both instruments were executed by Barton Thrasher on the same day, October 14, 1865. It appears from the will that on the same day on which Barton Thrasher executed the deed to Josephine V. Thrasher (later Overby) he made in his will a general distribution of his entire estate, and referred expressly to his gift to Josephine V. Thrasher. The judge evidently took the view that from the language used in the deed all of the rights of the children of Maude Overby, the daughter of Josephine V. Thrasher, were extinguished, because Maude Overby predeceased her mother.

■ The first question raised in the caveats is as to the jurisdiction; that is to say, that the court of ordinary of Morgan County has no jurisdiction to appoint an administrator de bonis

non cum testamento annexo of the estate of Barton Thrasher, inasmuch as Barton Thrasher was a resident of Clarke County at the time of his death, and the estate sought to be administered in this proceeding was then in Clarke County and is now within the limits of Oconee County, and in either event without the limits of Morgan County. By an act passed in 1875 (Ga. L. 1875, p. 109) the territory now embraced in Oconee County was taken from Clarke County and the 830-1/2 acres of land alleged to belong to the estate of Barton Thrasher and subject to administration is in Oconee County. There is a provision in our laws for the transfer of jurisdiction as to administrators, guardians, etc., upon the creation of a new county. The Civil Code of 1910, § 836, provides that a trustee, executor, administrator, or guardian, where a new county is created, has the option to change the jurisdiction of himself as such fiduciary to the court of ordinary of the new county; but if he does not exercise the option, the jurisdiction remains as it was. As related to a guardian, this court so held in *Malloy* v. *Malloy, 131 Ga.* 579 (62 S. E. 991). This section was taken from the act of 1905 (Ga. L. 1905, pp. 46-52); and by an act passed in 1914 (Ga. L. 1914, p. 48) the provisions of §§ 829 to 848 of the Civil Code, inclusive, were made applicable to all new counties "which are or may be subsequently created by constitutional amendment." However, it will be seen that the legislation referred to does not embrace counties which may have been created as Oconee was, by a legislative act in 1875, prior to the constitution of 1877, and prior to the creation of the new counties to which the act of 1905, supra, has reference. So far as we are informed, there is no rule, except it be drawn by analogy, to determine the question of the priority between the courts of ordinary of Clarke County and Oconee County. But conceding (following the policy adopted by the General Assembly above stated) that Oconee County, now embracing the territory in which the testator lived and where the property at issue is located, is entitled to the appointment—if an administrator for Barton Thrasher's estate must be named, we are met with another more difficult proposition. Under the provisions of § 4096 of the Code, which was taken from the act of 1812 (Cobb's Dig. 318), it is provided that "whenever, from any change of residence, or other cause, an administrator may desire to remove the jurisdiction of

his trust from the court of ordinary of the county of the residence of testator or intestate to that of his own residence, the same may be done by complying with the following requisitions: 1. By obtaining a copy of all the records of the ordinary relative to his trust, and causing the same to be recorded by the ordinary of the county of his residence. 2. By giving to the ordinary of his county new bond, with good security, for the discharge of his duty as administrator, in the same manner as if the administration were originally granted there. 3. By filing, with the ordinary of the county having original jurisdiction, a certificate, under the seal of the ordinary of the county to which the trust is to be removed, that the foregoing provisions have been complied with. 4. The ordinary having jurisdiction shall then pass an order transferring the trust to the ordinary of the other county." The order of the ordinary of Clarke County in December, 1867, changing the jurisdiction, was a transfer to the court of ordinary of Morgan County for all purposes connected with the administration of the entire estate of the testator. The Code provides no other way than that prescribed by § 4096 for the removal of a trust from one county to another. Under the terms of that section, to remove an administration from one county to another the removal can be effected only upon the motion of the representative of the estate. So we conclude that the trial judge did not err in holding that the application for letters of administration was properly within the jurisdiction of the court of ordinary of Morgan County.

We come then to consider the second ground of the caveats, which set up, in effect, that an administrator should not be appointed, because there is no estate to be administered. This objection has been considered in some prior adjudications of this court, and, under the circumstances then involved, held to be without merit. Perhaps the first case ruling distinctly upon the point was that of *Augusta & Summerville Railroad Co. v. Peacock,* 56 *Ga.* 146, but that was a case in which the railroad company contested the application for administration of the estate of an infant two years old, whose death occurred in a railway accident, upon the apprehension that the sole purpose of the applicant for administration was to be qualified to bring suit against the railroad for damages growing out of the tortious homicide of his intestate. This court held that the caveat was without merit, because the

caveator did not show any interest in the estate, or in the subject-matter of the application. We take the rule to be that while ordinarily one to be qualified to caveat an application for letters of administration of an estate, must be either an heir at law or a creditor of the decedent, still the law includes any other person who has a real interest in the estate or an interest of his own to protect, by which he can prevent useless waste, expense, annoyance, and injury to himself. An applicant for letters of administration must show that he has an interest in the estate; and likewise, before one can object to the appointment of any applicant for letters of administration, it must be made to appear that the caveator has an interest in the subject-matter which is to be administered. Generally, either an applicant or an objector must show that he is either an heir or creditor of the decedent; but this rule is not without exception. A caveator may be neither an heir nor a creditor of the decedent, but he may have such an interest in the estate or property sought to be subjected to administration that he can properly caveat an application to have an administrator appointed. This was expressly held in *Dierks* v. *Smith*, 119 *Ga.* 859 (47 S. E. 203). In that case, Smith filed a petition in the court of ordinary of Campbell County, alleging that Lofton had died, leaving an estate of the probable value of $1500, which under the law should be administered, and that petitioner by written agreement of the heirs had been selected as administrator. Dierks filed objection, averring that the estate of Lofton owed no debts; that the property consisted mainly, if not entirely, of 100 acres of land; that there were five shares of the estate and five distributees, all of full age; that one share of the estate (a fifth undivided interest in the 100 acres, the interest of W. H. Lofton, one of the original distributees), had been purchased by Dierks; and that the estate could be divided in kind, he having the same rights by reason of his purchase as W. H. Lofton would have had but for the sale. The ordinary overruled his objections and appointed Smith administrator, and upon appeal the caveat was dismissed upon the ground that Dierks was neither an heir nor a creditor of the decedent. But this court by a full bench reversed that judgment, and in concluding its opinion held: "Clearly, under the averments of the caveat in this case, Dierks has a one-fifth interest in the assets of the estate; and he

is interested in not having them wasted by an unnecessary administration."

And so we may say in this case, that, under the facts they set up, the caveators, claiming an entire interest in the whole tract of land which the applicant for administration sought to have administered, are interested in not having it wasted in expenses of an unnecessary administration. The question as to who may object to the grant of letters of administration has been before this court a number of times. In *Augusta &c. R. Co.* v. *Peacock,* supra, it was held: "Before one can be heard as a party to the proceeding before the ordinary, he must show that he has an interest in the choice of administrator, either as heir or creditor; some interest on the part of the objector in the assets and their distribution must appear." This court sustained the grant to Peacock of letters of administration of the estate of a child two years old, over objections of the railroad company upon the ground that the deceased left no creditor in Georgia and no property at all, and that the entire estate of the deceased consisted of a claim for damages for this homicide. The court held that it would not do to hold that one might object to the grant of letters of administration merely because he was "apprehensive that he might be sued by an administrator when appointed." Judge Jackson, delivering the opinion of the court, said further: "We think it best not to open the doors to such intervention. It might transfer to the ordinary questions of title to land, suits ex delicto, like this, and other matters not properly within the jurisdiction of that court." In *Dierks* v. *Smith,* supra, it was expressly held that the ruling therein made was not in conflict with *Augusta &c. R. Co.* v. *Peacock.* Of course, as said by Mr. Justice Cobb in *Towner* v. *Griffin,* 115 *Ga.* 966 (42 S. E. 262), "A mere interloper should not be allowed to interfere where a proper application has been made for letters of administration upon the estate. A person who is not concerned in any way in the question should, of course, not be heard before the court." But it is apparent in the present case that the caveators have a very substantial interest in the subject-matter of the proposed administration. In *Mathews* v. *Rountree,* 123 *Ga.* 327 (51 S. E. 423), Mr. Presiding Justice Fish made a very comprehensive review of the rulings of this court upon this subject, and the conclusion reached by the court was stated in the ruling that

"Not only heirs, legatees, and creditors of an estate, but also all other persons concerned in the legal administration of the assets thereof, including a cosurety of the decedent on a bond on which suit has been brought, may interpose a caveat to an application for a year's support." To one of the caveats in the case now before us was attached a copy of the will of Barton Thrasher. The execution of this will, as has already been pointed out, was contemporaneous with the deed. If it be granted that Barton Thrasher reserved for his estate in the deed a possible reversion of a contingent remainder which at some time in the distant future might be divided among his heirs, it is apparent from a reading of the will that he relinquished all interest whatsoever in the described land, and this in our opinion conveyed title in fee to Josephine V. Thrasher. Under the laws of distribution, it is equally plain that this, her property, descended to her heirs, subject to be administered as her estate.

As has been referred to heretofore, a copy of the will of Barton Thrasher was attached to the caveat of Bearden, executor of the will of Josephine V. Overby. In his application for letters of administration C. H. Baldwin avers that he has been requested by many of the persons interested in said estate "under said will" to make the application. It seems to us to be very clear that under this will there is no estate to be administered, and certainly not the tract of land in which the caveators are interested. The power of the administrator must depend entirely upon the will, in so far as the property specifically named in the will is dealt with. Of course an executor or administrator can administer property of a testator which is not dealt with in the will and as to which there is an intestacy, but so far as the present case is concerned there is nothing to be administered except the 830-1/2 acres of land which is specifically dealt with in the will, and as to which the testator says he has made a deed of gift to Josephine V. Thrasher, without any limitation whatsoever except that she should account for it at a named valuation in the distribution of his estate. It would seem that as the deed in this case and the will were both executed upon the same day, as contemporaneous writings they must be considered together in arriving at the intention of Barton Thrasher in each and both of his capacities as grantor in the deed and as maker of the will. If we do this, the reversion

contained in the deed, being something in his own favor, would be treated as wiped out by his later expression in his will, which not being revoked became effective at his death, with the result that Josephine V. Thrasher would have the absolute fee-simple title. We must disregard entirely what is said in the deed in the consideration of an application for administration. The executor of this will must respect the will of his testator, who says that the property at his death should be that of Josephine V. Thrasher free from all limitation. An application for administration can not be granted, as said by Judge Cobb in *Towner* v. *Griffin,* supra, to a mere interloper. The applicant for letters of administration bases his application upon this will; and so far as the 830-1/2 acres of land once owned by Barton Thrasher is concerned, he is a mere interloper. The cardinal, ever-essential rule for the proper construction of contracts of any kind is to ascertain the intention of the maker of the instrument. Construing the deed in this case and the will together, it is very plain that Barton Thrasher did not intend for any circumstances to arise by which his devise to Josephine V. Thrasher should be restricted or taken away from her or her lineal descendants, whomever they might be, and transferred to other sets of his grandchildren, or great-grandchildren. To use the language of the testator, "It being my will and direction that my children and grandchildren each set of grandchildren drawing one share, also Josephine V. Thrasher as above set forth, be made equal shares in my estate from first to last." In the preceding sentence of the eighth item of the will the testator directs his executors to make his sons, "the children of my deceased daughter Susan C. Anderson (representing one share), and my granddaughter Josephine V. Thrasher, all equal with the amount which I have given to the children of my deceased daughter Aceneth C. Overby, and then divide the balance of my estate equally among them the grandchildren where more than one in a set, viz., the children of my deceased daughter Aceneth C. Overby and the children of my deceased daughter Susan C. Anderson to be entitled in such division to the same amount of one of my children, and my granddaughter Josephine V. Thrasher, being the only living child of her deceased father, is to share in the division as one of my children." As we have already said, the controlling point on this feature of the case is the fact that the executor, under the

directions in this will, can not administer upon the only property of Barton Thrasher alleged to be in existence, for the sufficient reason that whatever Barton Thrasher may have conveyed to Josephine V. Thrasher by the deed he upon the same day conveyed the absolute title by will, which took effect at his death in a title in fee simple. We hold, therefore, that the application for letters of administration should not have been granted, and that the court erred in sustaining the demurrer to the caveat, and of course in thereafter directing a verdict in favor of the applicant, and in the direction to the court of ordinary to issue letters of administration.

*Judgment reversed. All the Justices concur, except Atkinson, J., who dissents from the ruling in the second division.*